United States v. Brown Hold on a minute, Ms. Fleet. Let's let the courtroom settle. Yeah, that's often the case that advocates can't see because you don't have eyes at the podium. Okay, Ms. Fleet. Please come speak to us. Good morning. May it please the Court, Judge Pryor, Counsel. My name is Teresa Van Fleet. I represent Mike Brown, who is the Appellant, Cross Appellee in the case before the Court this morning. For ease of reference and to save time, I'm just going to refer to him as Mr. Brown, if I may. Judges, one of the things I want to do this morning is focus the Court's attention not on all of the issues raised in our brief, but rather on, in this case, in the limited time we have this morning, the motion for a new trial. We've argued the sufficiencies of the evidence issues in the brief. Obviously, I would respond to any questions the Court may have on that, but if I may take things out of order a little bit, I'd like to start with the motion for a new trial, which the Appellant, Mr. Brown, argues was denied in error by the District Court. Now, this is one of those cases where there's really no disagreement about the law, the standards of review, except for the cross appeal in terms of the sentencing. There's no question that a motion for a new trial is governed by a standard of abuse of discretion. We don't quibble with that. There's no question that a motion for a new trial is to be rarely granted, and only in an exceptional case. It's a tough standard for you. I believe the Eleventh Circuit has said it's a stringent standard. I'm not sure which is worse, but neither is particularly hospitable to me. I grant you that. I think that this case is that exceptional case, and I think the District Court erred in her determination that it wasn't. I think that because one of the things, and indeed the government itself and its brief noted this at page 24, one of the things that makes a case rise to that exceptional level is where a government's witness is impeached. Here, we don't just have an impeachment, and I don't mean an impeachment in front of a jury with a prior and consistent statement. I mean a gutting, if you will, of that witness's testimony. Here, we don't have just an impeachment. We have a recantation by the government's use of force expert, Sergeant Aiken. That recantation was of his trial testimony that Mr. Brown did not holster his firearm, his service weapon, during the interaction with the victim, in this case, Mr. Braswell. Now, to be sure, and I noted this in the brief, the court below knew about that testimony at the point in time where she denied the motion for a new trial. I'm not suggesting that she wasn't aware of the fact. I am suggesting, however, that she did not consider that fact, as is plain by her written order, in assessing whether this rises to the level, this case, this recantation rises to the level of the exceptional case, where a motion for a new trial... My question is procedurally. The government, as I recall, I can't put my finger on it now, but the government, as I recall, says that there's like a separate rule that governs motions for a new trial based on what I'll call after-acquired evidence, and that... Newly discovered. Truly newly discovered evidence, and that's really just not what we're talking about here. Correct, and below it was made clear, I believe, trial counsel, now Magistrate Reinhart, acknowledged in the record before the court, and the court noted that she could not consider in deciding for the motion for a new trial, the actual fact of the enhanced video. The video itself, in real time, had been introduced at trial and seen by the jury. After the jury's verdict, so obviously the video existed, after that it was slowed down, for lack of a better term, and frame by frame or elongated, I'm not quite sure what the technical term is, but when you looked at it in not real time, Sergeant Aiken testified during the motion for a new trial hearing, that he changed his opinion, Sergeant Aiken being the use of force expert. He changed his testimony about whether Mike Brown holstered his weapon during this time that the government had argued throughout the trial before the jury that he had held the firearm in his hand when he used his fist to secure the compliance. So I'm not suggesting that this is a situation of a newly acquired evidence as to the video, but surely, Detective Aiken or Sergeant Aiken's testimony where he recants his prior trial testimony before the jury is. It is new. It didn't, obviously it didn't happen in front of the jury because he's recanting that which he said. And the standard really that was used by the district court and which was agreed to by both of the parties was not that which deals with a newly discovered piece of evidence, but rather whether in this case the evidence preponderated such, so heavily, that a miscarriage of justice took place, a miscarriage of justice which is shocking. And that's why in the brief we discussed the fact that the other co-defendants were acquitted of essentially the same charges on the same action, not, as I said in the brief, to suggest that the inconsistency of the verdicts mandates a new trial, but rather as evidence as to the magnitude of the injustice that was occasioned in this instance. And for those reasons, we think that the district court was in error when she determined that this was not the exceptional case, that this was not the situation where the use of the gun, now having been debunked, was not one that permeated the trial in this case. And on top of the sufficiency of the evidence as to two other critical elements in the case, that being willfulness, most importantly, as well as the use of force that was applied. So let me briefly address those in the moments I have left in the main of my argument before rebuttal, which I will devote to the cross-appeal, since I don't know what counsel's going to argue yet. As we noted in the brief, there's a question, in our view, of the sufficiency of the evidence as to the use of force involved. Obviously, in a civil rights case such as this, the use of force level that can be employed is dependent on the amount of resistance that presents from the alleged victim. In this case, Mr. Braswell. It's an escalating scale, and of course the totality of the circumstances have to be considered. And it's a standard of whether an objectively reasonable, there's that word again, police officer viewing the totality of the circumstances would judge the resistance, in this case, to be active versus passive. I note that the government suggests, and perhaps it's just an artful wording in its brief, that Mr. Brown admitted in the record below to the use of passive resistance. And that takes place at page seven. That's simply not the case. There's never been an admission by Mr. Brown that Mr. Braswell was passive. The video that the jury did see, to me, speaks volumes about Braswell's even ability to have done anything other than act passively. As far as I can tell, the door was open and he was immediately kicked and punched. It doesn't appear that he could have even unbuckled his seatbelt. Your Honor, I take... And there was testimony that he hadn't unbuckled his seatbelt. I take the court's point on that. However, that assumes that we start the clock running at the moment that the door is open. And that's simply not, that's divorcing the rest of the circumstances and taking a snippet of time and making that one minute and 28 seconds or whatever it was, 90 seconds, basically, that being the only circumstances that are going to comprise the totality. And ignoring that everything that happened before then. And the government argues in its briefing, and really to your point, Judge Newsom, that they had to take Mr. Braswell as the passenger and only look at what he did right then. Yeah, that makes sense to me. I don't understand how what was happening beforehand really bears on resistance, passive or active, on the part of the passenger until that door is opened. Understood, Your Honor, with the exception, understood, but respectfully recall also that during this chase, and as outlined in the brief, among the things that were happening, among the back and forth during this entire time period is somebody tossing something out of the passenger side window. And there's no way for an objectively reasonable officer coming up after all of this back and forth that the court's well aware of in reading the briefs. And in the 90 seconds as Officer Brown is attempting to secure compliance and shouting, raise your hands or put them on the dashboard. Fair enough. Perhaps he could not have reached down and unbuckled his seat belt. I dare say I probably wouldn't either. Not that that makes a hill of beans a difference, but there's absolutely no reason he could not have complied with that. The door was open and he was being punched immediately. I mean, the video is crystal clear. Your Honor, prior to that point in time, it was the passenger in a car leading police officers on a high speed chase and perhaps throwing something out of the window. I have a question about a sentencing enhancement for aggravated assault before you finish up, which is, did the district court misunderstand that this was binary, that it had to determine whether what was being done was to gain control of the victim versus, you know, cause harm to the victim and could it not have been that he had both intentions, that it's not binary and that the district court misunderstood the law about that? I don't think that the . . . and I'll get back to your question, Judge Newsom, if I may. Answer his and then you can answer mine and I'll let you have the time. Judge Newsom, the discussion of the facts in your question ignores that point in time from when the car is stopped, both cars are stopped, and Mike Brown gets out of the car, draws his service weapon, stands at the side of his car, then at the front of the subject vehicle. All the while he is issuing loud verbal commands to raise your hands or put your hands on the dashboard. Never mind the loud verbal commands being issued by the other officers. So it is not, as the government suggests in its brief, a situation where there was no time and there was a rush to judgment. It was pretty fast. The whole incident was pretty fast. Literally, I think it's about 90 seconds. But during that time period, armed with everything that had happened before, armed with a refusal of Mr. Braswell to do that which you must concede he could have, that is, put his hands on the dashboard, we submit that an objectively reasonable officer would have believed there was active resistance. As to the court's, Judge Pryor's question about the sentencing and whether the binary nature of the dual intents, if you will, was misunderstood or misapplied by the court. First, that argument wasn't made below, but more importantly, I don't think that if one considers what the definition of intent to do bodily harm is under the applicable guideline, that is a felonious action, assault, with the intent to cause bodily injury. That cannot be reconciled with the attempt to gain compliance with a lawful order. Because if you're gaining compliance with a lawful order, it isn't felonious. You may be committing, there may be occasioned bodily injury, but the two are not compatible. I see my time is up. Thank you for letting me answer. May it please the Court, Christopher Wang on behalf of the United States. With regard to the excessive force issue, the evidence was more than sufficient to establish that Brown's use of force against J.B. was objectively unreasonable. First of all, we have Brown's own words. He admits in all versions of his officer report that he used hard force against J.B. in response to nothing more than J.B.'s failure to comply with loud verbal commands. Second, we have the testimony of Patrick Monteith, who witnessed J.B. being moved backward and forward while he was restrained by a seat belt in the car, and that's when the taser was deployed. Third, we have the testimony of the government's use of force expert, Cedric Aiken, who testified that J.B.'s conduct, as described by Brown and as witnessed by Monteith, constituted passive resistance for which department policy based on the constitutional reasonableness standard allowed only soft control techniques to gain compliance. Aiken further testified that the hard force that Brown had not... We ought not to be equating, though, their training with necessarily what the Constitution requires, should we? Your Honor, I don't think that a violation of policy is necessarily a violation of the Constitution, but Aiken... Yeah, but I don't have to buy that. You don't, but the jury bought it, Your Honor, and I think viewing the evidence... I mean, that's a legal question, isn't it? Yes, Your Honor, but certainly the jury saw the testimony of... heard the testimony of Cedric Aiken, who testified that this was not proper under department policy because it is appropriate to use soft control techniques and not hard force in response to passive resistance... I mean, I think the training's relevant in the determination, but surely you would agree that we ought to be careful to avoid the suggestion that the training should be equated with the constitutional standards. I agree with that, Your Honor. I think it's relevant. It's not dispositive, but the jury heard the testimony... I don't think it's inadmissible evidence. I would agree, Your Honor, but based on all this testimony, a reasonable jury could conclude that Brown's use of hard force was objectively unreasonable. Opposing counsel in her opening remarks stated that Brown made loud verbal commands for J.B. and the other passengers to get out of the car and that J.B.'s failure to do so somehow constituted active resistance. Is the record undisputed about that, that there were those loud verbal commands preceding the opening of the door, or could the jury have reasonably inferred that, in fact, not even that happened? I think the jury could infer that that didn't happen. Brown stated in his officer report that prior to opening the door, he issued loud verbal commands. The videotape obviously doesn't have sound and doesn't indicate what he was doing outside of the car. I would add that there is a very, very short period of time between when the car stopped and when the door was opened. I think it's approximately 10 seconds and approximately 8 seconds from between when Brown and the other officers were focused their gun on the car and when Brown opened the door and kicked J.B. Even if Brown issued loud verbal commands outside of the car, the failure to exit the vehicle is still passive resistance. That's just failure to comply with verbal commands, and that certainly doesn't constitute active resistance. That would warrant opening the door, kicking, and then punching J.B. What about in one of the officer's reports that indicated that he was putting his hands between the seats  I believe you're referring to Officer Ryan's report. Officer Ryan's report about J.B. reaching in between the seats should be taken with some skepticism, because he only added that after, I believe, eight days after his submission of his initial report and after Sergeant Antico rejected that report. In any event, Officer Ryan's perception as to what J.B. was doing is irrelevant to Brown's response. Possibly relevant to Officer Ryan's response and what kind of force he used on J.B., but certainly not relevant to Brown's response. And Brown never indicated that J.B. was engaged in any kind of resistant behavior, any kind of conduct above refusing to comply with loud verbal commands. Why would that be irrelevant to Brown's response, if J.B.'s hands were between the seats? Well, if Brown never noticed that, I don't think he could argue that his use of hard force was in response to active resistance that he didn't himself perceive. Like I said, it's possibly relevant to Officer Ryan's conduct, why Officer Ryan used force on J.B., but certainly not relevant to why Brown used force on J.B. If the panel doesn't have any additional questions on excessive force, I'd like to move very briefly to the issue of willfulness. The standard for willfulness is the familiar standard from Screws that this court reiterated in the House. The government needs to show that Brown acted with a specific intent to deprive the victim of the right to be free of unreasonable force or recklessly disregard that right. The evidence was more than sufficient for the government to meet that burden. Brown intentionally used hard force of increasing severity, a kick, a punch, then a taser against a passively resisting J.B. He used this force with the knowledge that department policy prohibited the use of such force to gain compliance when confronted with passive resistance and attempted to conceal such conduct by omitting a full and true description of his force from his officer report after the incident. Now I'd like to move to the issue of a new trial. The district court acted well within its discretion in concluding that it would not be a miscarriage of justice to let the jury verdict stand. The government presented significant, largely uncontroverted evidence that Brown used violent force against a passively resisting J.B. in violation of department policies of which he is aware and attempted to conceal such conduct in omitting a true and full account of his force from his officer report. As Judge Newsom pointed out, the enhanced video, he did not attempt to introduce this as newly discovered evidence under federal rule of civil procedure 33, and therefore the district court disclaimed that, right? He affirmatively said we're not doing that. The district court affirmatively said it would not consider it because it was not before the jury. We're not relying on that. Yes, the district court, in the denial for the motion for the new trial, the district court noted... I'm not talking about what the district court said. I'm talking about what defense counsel said. Yes, defense counsel specifically disclaimed any reliance on rule 33 in attempting to introduce the enhanced video. In any event, even if the enhanced video was introduced, it would not affect the district court's decision. As the district court noted, the government charged Brown with using hard force in several ways other than with a gun in his hand, such as a kick, a punch, and a taser, and that use of force satisfied the verdict. It was more evidence. The evidence did not preponderate heavily against the guilty verdict on Section 242, considering all this other hard force. I think the opposing counsel brought up the inconsistency between the jury's conviction of Brown and his acquittal of his co-defendants. I think the jury's decision-making is a black box, which is why we don't want to rely on inconsistent verdicts when we're determining whether the weight of the evidence was weighted against the defendant's conviction. In any event, the evidence . . . I'll move to that right now, if Your Honor would like. Did you make the argument that I've been concerned about? Did the government make the argument that it seemed to me the district court might have misunderstood that this issue about gaining control versus intentionally causing bodily injury doesn't necessarily have to be binary? You could have both intents. I think the district court did misunderstand that, Your Honor. Did you make that argument? We did not make that argument below. We made the claim below that this enhancement should apply, but we did not know . . . You didn't know the district court was going to view it that way. That's correct, Your Honor, and we could not have made the argument because when we attempted to move for reconsideration, the district court decided that she was not going to consider the merits of that argument. This aggravated assault guideline applies because Brown's felonious assault of J.B. involved a dangerous weapon, a taser, with the intent to cause bodily injury. As Judge Pryor noted, the district court's rejection of the guideline was erroneous because it was based on an incorrect view that the intent to cause bodily injury is mutually exclusive from the intent to gain control. It's not entirely clear to me that that's what happened. That's the thing that's bugging me about this. It may be that the district court really did understand the standard, but I'm concerned that maybe it did. Do you think it's clear from the record that the district court thought it was binary? I think that's the most logical interpretation of her decision, Your Honor. The facts here are pretty much . . . One way you could say is, look, I just don't think it was to gain control or to cause injury. I think it was to gain control. You, the district court, could understand that it's not necessarily a binary choice, but find, as a matter of fact, that it was one. And not the other, right? Yes, you could. But in this case, I think the facts are pretty much undisputed. Brown intentionally deployed his taser twice and believed that the taser's probes had struck and penetrated J.B.'s body. The district court didn't really dispute any of those facts, but came to the conclusion that there was not an intent to cause bodily injury because there was also an intent to gain control over J.B. But, of course, the intent to gain control with a taser involves . . . Do you acknowledge that . . . let's say we think, you know, it looks to us like the district court might have misunderstood this. So we're going to vacate and remand for resentencing. The district court could, nevertheless, reach the same decision with a correct understanding of the law. I'm not sure that's right, Your Honor. I think any intentional use of a taser that's not legally justified would warrant it to a 2.2 guideline. There's no allegation . . . We might or might not have to argue about that in the event there's another appeal. That's correct, Your Honor. I guess I've got sort of a related question, I think. In your brief, you say, look, they don't have to be mutually exclusive. And I think if I've got the quote here, you say a taser is designed to cause bodily injury and incapacitate its target. And, therefore, there is no reason to fire a taser other than to bring about incapacitation through bodily injury. Does that not prove a little bit too much? The use of any weapon, tool, to bring about compliance, a baton, handcuffs, for that matter, also falls into the logic of your argument, right? Like you are . . . the whole point of this thing is to incapacitate the person. And bodily injury sort of comes as an unhappy incident of that. But the two go together. So now are we going to be in the position, including when your clients are defendants, FBI agents, that every use of a baton or a taser or handcuffs, perhaps, qualifies for this enhancement? I don't think we need to go that far, Your Honor. I think a taser is qualitatively different from something like a baton. When you're defending civil or even criminal lawsuits against your own officers, that their use of a taser to bring about compliance automatically qualifies for some sort of enhancement. Well, first, Your Honor, you have to have the conviction of the felonious assault. And that's what we have here, the Section 242 conviction that involved use of a taser with the intent to cause bodily injury. So I think that might provide some sort of screening mechanism to ensure that maybe that the use of this guideline for taser use is not used more frequently than the court would seem reasonable. So I think that's sort of one way in which the ---- Was it a double-counting problem that's already accounted for in the offense itself? I don't think so. But I do think that the use of the taser as the basis for 282.2 is necessarily going to pose the kind of issues that Your Honors think that might be posed because you have to have the conviction and you have to have evidence that the taser was used, such as in this case there's no dispute that it was used intentionally. And you have to have a ---- Surely just intentional use of a taser doesn't get you the enhancement, right? I mean, I hope that police officers, when they use the taser, mean to use it. Well, certainly if the use of the taser was legally justified, say if there was active resistance, then that would not implicate 282.2. But in this case you have three separate uses of hard force, a kick, a punch, and a taser, and there's no dispute that at all times JB was passively resisting. So you don't have the problem of ---- Well, and let me point you to Judge Rosenberg's order on the motion for reconsideration and have you react to her language. The court found that Officer Ryan's report had sufficient indicia of reliability, thus it was appropriate for the court to cite Officer Ryan's report along with the testimony of Officer Monteith in stating that some evidence suggests that Officer Brown used the taser to gain compliance rather than to cause bodily injury. So we do have here where the district court was in fact understanding that there were two options. They might not be mutually exclusive, but it's pointing to evidence in the record to support the district court's decision. How do you respond to that? I think the district court got that wrong. I think the district court didn't have an understanding that the intent to use a taser necessarily implicates the intent to cause bodily injury. You have to go that far? Yeah, please don't. I don't think the district court indicates it's confused. Isn't your better argument that it could be dual intent and the district court failed to understand that? Your Honor, it appears from your question that that's probably the better of the arguments. I want your candid answer, Mr. Swain. Do you think that's the better argument? I do think because it doesn't go as far as the initial answer I gave. Your Honor, I think that the fact that we have to have the taser used has to be intentional and has to be not legally justified for 282.2 to apply. We've allowed you to go over a minute and a half. We did the same for your adversary. Thank you. It is the better argument, without question. Not that you were asking, but it is the better argument. The problem here, however . . . I mean, the district court's misapprehension of that point would not become apparent until the district court said what it said. That's his point. I understand that, Judge. I get what you're saying, I think. But the problem here is there's no way . . . Personally, in reading it, in reading her order on the motion for reconsideration, in reading her comments, both written and in the record, about the application of the guideline, there's no indication to me that she didn't understand that it was not either or, that they both could live together. I personally don't disagree with that, but I think she understood it, and she found that factually . . . Well, if you're right, then she'll make the same finding again. If we were to vacate and remand for resentencing, she could say, well, despite my inartful language, I understood this all along, and I found that it was one, not the other, even with the understanding that it could be both. And she could say that in the same sentence, end of confusion, right? She could, but the reason why there's confusion is it wasn't discussed ahead of time. If they had some concern about it, then they should have . . . It would be kind of like me coming in here and saying, sufficiency, pick an element. That's what I'm arguing. You can't anticipate everything a district court is going to say that might be erroneous. I don't see where the failure to anticipate that error or that misapprehension by the district court, if it was a misapprehension, means anything. It means that the person who was deciding it in the first instance had the opportunity to go through her reasoning for whether she believed it was binary, whether she didn't believe it was binary. And it would certainly end the confusion, but more importantly, the whole purpose of preserving your issues and your arguments below is to give that person making the decision the opportunity. And Lord knows, a review of the record in this case makes it plain that Judge Rosenberg, while I may disagree with her on some things, was pristine in going through facts, law, inferences, both up and down. So there's just no reason to believe that had she not been given this argument while they were arguing they were dual compatible intents, if they had said binary, not binary, and argued it, there's no reason to believe that if in fact she got it confused, which I don't think she did, that she would not have ruled the exact same way.